## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

COLLETTE F.,

   *Plaintiff,*

 vs.

              Case No. 20-1291-EFM

SOCIAL SECURITY ADMINISTRATION,
Kilolo Kijakazi, Acting Commissioner,

   *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Collette F. seeks review of a final decision by Defendant, Commissioner of Social Security ("Commissioner"), denying her application for child disability insurance benefits under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act. Plaintiff alleges that the administrative law judge ("ALJ") did not properly weigh the medical opinions, giving the treating physician's opinion little weight and assigning significant weight to the opinions of non-examining medical experts. Having reviewed the record, and as described below, the Court affirms the order of the Commissioner.

### I.   Factual and Procedural Background

Plaintiff was born on February 29, 1996. On February 28, 2017, she applied for disability benefits alleging a disability beginning at birth. She alleged that she was unable to work due to several conditions including autism spectrum disorder, anxiety, agoraphobia, panic disorder, and

executive functioning impairment.   Plaintiff's application was denied initially and upon reconsideration.  She then asked for a hearing before an ALJ.

ALJ Scott Johnson conducted an administrative hearing on October 10, 2018.  Plaintiff was not represented by counsel, and Plaintiff testified about her medical conditions.  The ALJ also heard from Plaintiff's mother and Jennifer Smidt, an impartial vocational expert.

On March 1, 2019, the ALJ issued his written decision, finding that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  The ALJ found that Plaintiff suffered from autism spectrum disorder with secondary anxiety and executive function impairment, agoraphobia, and panic disorder.  The ALJ determined that Plaintiff's impairment or combination of impairments, while severe, did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ found that Plaintiff had the residual functional capacity ("RFC")

to perform a range of work at all exertional levels.  She is able to understand, remember, and carry out simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements; involving only simple, work-related decisions; and with few, if any, workplace changes.  She can have no interaction with the public; can have occasional interaction with co-workers, but cannot perform tandem tasks; and can have frequent interaction with supervisors.[1]

The ALJ then determined that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy.  Thus, the ALJ concluded that Plaintiff had not been under a disability from February 29, 1996 through the date of his decision.

Given the unfavorable result, Plaintiff requested reconsideration of the ALJ's decision from the Appeals Council.  The Appeals Council denied Plaintiff's request on August 20, 2020.  Accordingly, the ALJ's March 2019 decision became the final decision of the Commissioner.

---

[1] ALJ Decision, Doc. 15, p. 31.

Plaintiff filed a Complaint in the United States District Court for the District of Kansas. She seeks reversal of the ALJ's decision.  Because Plaintiff has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II.    Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[2]   The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[3]  "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[4]   The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[5]

"An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[6] This impairment "must be severe enough that she is unable to perform her past relevant work, and

---

[2] 42 U.S.C. § 405(g).

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[4] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[5] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[6] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

further cannot engage in other substantial gainful work exiting in the national economy, considering her age, education, and work experience."[7]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[8]  The steps are designed to be followed in order.[9]  If it is determined, at any step of the process, that the claimant is or is not disabled, further evaluation is unnecessary.[10]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments.[11]  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[12]

Upon determining the claimant's RFC, the Commissioner turns to steps four and five, which require the Commissioner to determine whether the claimant can either perform past relevant work or can generally perform other work that exists in the national economy, respectively.[13]  The claimant bears the burden in steps one through four to prove an impairment or

---

[7] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005)).

[8] *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); see also 20 C.F.R. § 404.1520(a).

[9] *Barkley*, 2010 WL 3001753, at *2.

[10] *Id.*

[11] *Lax*, 489 F.3d at 1084 (citations omitted).

[12] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)).

[13] *Id.* (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

combination thereof that prevents the performance of past relevant work.[14]  The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, based on the claimant's RFC and other factors, the clamant could perform other work in the national economy.[15]

### III.    Analysis

Plaintiff challenges the ALJ's finding that the opinion of her treating physician, Dr. Nancy Zidek, was entitled to little weight compared to the opinions of other non-treating clinicians. Specifically, Plaintiff argues that the ALJ's weighing of the medical opinions is not supported by substantial evidence.

The ALJ has a duty to consider all the medical opinions in the record and discuss the weight assigned to each opinion.[16]  "A treating physician's opinion must be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."[17]  If the treating physician's opinion is not entitled to controlling weight, the ALJ still must determine what weight, if any, to assign to the opinion by considering the factors listed at 20 C.F.R. § 404.1527.[18]  These factors include the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors.[19]  The ALJ

---

[14] *Lax*, 489 F.3d at 1084.

[15] *Id.* (citation omitted).

[16] *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (citation omitted).

[17] *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014) (internal quotation marks and citation omitted).

[18] *Id.* at 1176-77.

[19] 20 C.F.R. § 404.1527(c)(2)-(6).

- 5 -

must give good reasons for the weight he assigns to the treating physician's opinion and must give specific, legitimate reasons if he completely rejects the opinion.[20]   The ALJ is not required to expressly discuss each factor, but the reasons stated must be "sufficiently specific" to allow meaningful review.[21]   Generally, the ALJ should give more weight to opinions from treating sources over the opinions of other medical professionals.[22]   In addition, the ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[23]

The ALJ concluded that Dr. Zidek's opinion is entitled to little weight because it is not well supported and is inconsistent with the record as a whole. In particular, the ALJ noted that Dr. Zidek's opinion was not supported by her own records, explaining:

> [Dr. Zidek's] treatment notes do not document the claimant presenting with serious, persistent psychologically-based abnormalities that would reasonably support her conclusions. . . Dr. Zidek only noted the claimant to present with psychologically-based abnormalities approximately once per year, and the abnormalities were relatively mild in nature.  Additionally, Dr. Zidek did not recommend the claimant for treatment that is reasonably support [sic] of her conclusions.  Rather, she merely prescribed the claimant psychotropic medications and referred her to care with Pawnee Mental Health Services.  The claimant's treatment notes at Pawnee Mental Health Services and Counseling Associates of Flint Hills similarly do not document persistent, psychologically-based abnormalities reasonably commensurate with the degree of limitation assessed by Dr. Zidek.[24]

The ALJ also noted that Dr. Zidek's opinion was inconsistent with the record as a whole, explaining:

---

[20] *See Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (citations omitted).

[21] *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins*, 350 F.3d at 1300).

[22] 20 C.F.R. § 404.1527(c).

[23] SSR 96-2p, 1996 WL 374188, at *5 (rescinded for claims filed on or after 3/27/2017).

[24] Doc. 15, at 36.

The undersigned also notes that the degree of limitation assessed by Dr. Zidek is inconsistent with the claimant's activities of daily living, including her abilities to perform complex tabletop and roleplaying games, extensively use a computer, and attend comic book and anime conventions.[25]

The claimant's presentation at the hearing is also noteworthy.  The claimant presented with speech irregularities generally consistent with her allegations, but only at the outset of the hearing when her mother was present. For the majority of the hearing, during which the claimant testified alone, she did not demonstrate any discernible abnormalities reasonably consistent with her allegations.  Notably, for most the hearing, the claimant spoke without any speech irregularities, was able to understand questions posed to her and reply in an articulate manner, and was able to advocate on her own behalf.  The claimant's presentation at the hearing is more consistent with her documented presentation at Pawnee Mental Health Services than either her presentation at other facilities or her allegations of disability."[26]

Also of note, the claimant worked part-time as a dishwasher for approximately three months in late 2014 and early 2015.  The job ended due to a scheduling conflict, not because of the claimant's impairments.  She has since applied for multiple other jobs."[27]

Plaintiff argues that the ALJ erred by failing to specifically acknowledge that Dr. Zidek's opinion was entitled to controlling weight and by failing to specifically state that he was not giving it that weight.  However, the Tenth Circuit has held that when an ALJ's analysis of what weight to afford a treating physician's opinion makes clear that the ALJ implicitly declined to give the opinion controlling weight, the decision should not be reversed for failing to expressly so state.[28] Here, the ALJ found that Dr. Zidek's opinion was not supported by her records and was not consistent with other evidence in the record, which constitutes a sufficient reason for not giving

---

[25] *Id.*

[26] *Id.* at 35.

[27] *Id.* at 30.

[28] *Mays,* 739 F.3d at 575 (refusing to reverse the ALJ's opinion on the grounds that the ALJ failed to expressly state whether he had given the treating physician's opinion controlling weight because "the ALJ implicitly declined to give" the opinion controlling weight); *see also Tarpley v. Colvin,* 601 F. App'x 641, 643 (10th Cir. 2015) ("[A]ny imaginable oversight on this score is clearly harmless because the ALJ's ruling unambiguously demonstrates that he declined to give the opinions controlling weight.").

the opinion controlling weight.[29]  This, along with the ALJ's decision to afford Dr. Zidek's opinion "very little weight," indicates that the ALJ implicitly declined to give the opinion controlling weight.  Therefore, the Court will not remand the ALJ's decision on the basis that the ALJ failed to separately address each step in this analysis.

Plaintiff also argues that the ALJ did not adequately consider the factors listed at 20 C.F.R. § 404.1527 when assigning the weight to be given Dr. Zidek's opinion.  While the ALJ did not expressly discuss each factor, he is not required to do so as long as this Court can determine the factors were considered.[30]  The Court finds the ALJ's lack of specific mention of the factors does not prevent meaningful review.  The ALJ identified Dr. Zidek as Plaintiff's primary care physician and pointed out that Dr. Zidek only documented psychologically-based abnormalities approximately once a year.  The ALJ found Dr. Zidek did not recommend treatment that is reasonable in light of her conclusion that Plaintiff cannot function independently or care for herself, and further found Dr. Zidek's conclusions were not consistent with Plaintiff's treatment notes from other providers or Plaintiff's activities of daily living.  The ALJ sufficiently explained that Dr. Zidek's opinion was entitled to little weight because it was not well-supported or consistent with the record. The ALJ concluded, "Because her opinions are neither consistent with nor supported by the preponderance of the evidence, the undersigned gives the opinions of Dr. Zidek little weight."[31]  "A finding that an opinion is unsupported by the evidence constitutes good cause for assigning the opinion little weight."[32]

---

[29] *See Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

[30] *See Oldham*, 509 F.3d at 1258; *see also L.S. v. Saul*, 2019 WL 5455822, at *6 (D. Kan. 2019) (citing *Griner v. Astrue*, 281 F. App'x 797, 800 (10th Cir. 2008)).

[31] Doc. 15, at 36.

[32] *L.S.*, 2019 WL 5455822, at *7 (citing *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987)).

Further, as the ALJ pointed out in his discussion of the weight to be given to the opinion of another clinician just before discussing Dr. Zidek's opinion, statements that a claimant is "disabled" or "unable to work" are not medical opinions but instead are "administrative findings dispositive of a case."[33]   As such, they are reserved to the Commissioner and not entitled to any special significance.[34]   Dr. Zidek opined that she did not believe Plaintiff was capable of functioning independently of her parents or a caregiver, or was able to effectively care for herself.[35] This is a conclusory statement with no evaluation of the nature and severity of Plaintiff's limitations or any information about what the Plaintiff's capabilities are.   As such, it is not entitled to any special deference.[36]

Plaintiff also argues that the ALJ erred in giving significant weight to the opinions of the non-examining State agency psychologists.   "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around."[37]   If the ALJ relies on a non-treating physician's opinion, he must explain the weight given to the opinion and give good reasons for that weight.[38]

Plaintiff's position is that the ALJ did not explain why the reports of Dr. Cohen and Dr. Leaf outweighed Dr. Zidek's opinion.   The ALJ's opinion, however, includes an adequate explanation.   The ALJ states that he has given "great weight" to the opinions of Drs. Cohen and

---

[33] Doc. 15, at 35.

[34] Doc. 15, at 35 (citing 20 C.F.R. §§ 404.1504, 404.1527(d), 416.904, 416.927(d)).

[35] Doc. 15, at 36.

[36] *See Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008).

[37] *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citation omitted).

[38] *Id.*

Leaf because they are familiar with the disability determination process and standards; they have specialized training and expertise; they based their opinions on comprehensive reviews of Plaintiff's record; their opinions are consistent with that record; and their opinions are accompanied by detailed narratives.[39]   While the ALJ did not include a paragraph expressly comparing the non-examining consultants' opinions to Dr. Zidek's opinion, he was not required to do so.  He explicitly identified the weight he gave to each of the opinions offered and supported each weight assignment with good reasons.

Last, Plaintiff points out that Drs. Cohen and Leaf did not have access to the full longitudinal record because they provided their opinions before Dr. Zidek and Susan Mulryan, LSCW, submitted their narrative opinions.  The ALJ addresses this in his opinion, stating

> Although some evidence has been added to the record since the State agency consultants' reviews thereof, that evidence is cumulative of what was already present in the case record.  That is, the additional evidence does not document an appreciable worsening in the claimant's condition since the State agency consultants' opinions were rendered.[40]

While the ALJ should not rely on a "patently stale opinion,"[41] here a matter of months separated the opinions and, as the ALJ stated, Dr. Zidek's and Ms. Mulryan's narrative opinions did not document any significant worsening of Plaintiff's condition in the intervening period. Moreover, the ALJ determined that the Zidek and Mulryan opinions were not adequately supported.  Where "nothing in the later medical records [Plaintiff] cites supports the disabling limitations found by [the treating physician opinions] or a material change in [Plaintiff's] condition

---

[39] Doc. 15, at 35.

[40] *Id.*

[41] *Chapo v. Astrue*, 682 F.3d 1285, 1292-93 (10th Cir. 2012).

that would render [the state agency psychologists'] opinion[s] stale," the ALJ did not err in assigning them great weight.[42]

The Court concludes that the ALJ did not commit error in his weighing of the medical opinions in this matter.  This Court must affirm an ALJ's decision if substantial evidence supports that decision.  While a different factfinder may have come to a different conclusion, this Court may not reweigh the evidence.[43]

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated this 12th day of January, 2022.

This case is closed.


ERIC F. MELGREN
CHIEF U.S. DISTRICT JUDGE

---

[42] *Tarpley*, 601 F. App'x at 644.

[43] *Bowman*, 511 F.3d at 1272.